## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| DONNA R. McKINNEY and | ) | |
| JANICE POOLE as heir and | ) | |
| successor-in-interest to | ) | |
| PEGGY L. WALDOW, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 2:05-cv-01239-JEO |
| | ) | |
| GREENETRACK, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

This case is before the court on the defendant's motion to dismiss the plaintiffs'

complaint. (Doc. 5)[1]. The plaintiffs, Donna R. McKinney and Janice Poole,[2] have responded

(doc. 11) to the defendant's motion to dismiss and the defendant has replied (doc. 12) to the

plaintiffs' response. Thereafter, the plaintiffs requested a hearing on the motion to dismiss,

which the court granted. The day before the hearing, the plaintiffs filed an "Addendum to

Response to Defendant's Motion to Dismiss." (Doc. 17). After the hearing, the defendant filed a

document providing supplemental legal authority (doc. 19) and the plaintiffs filed a supplement

to the addendum to their opposition to the defendant's motion to dismiss (doc. 20) along with

affidavits in support thereof (doc. 21). Finally, the defendant filed its supplemental reply to the

plaintiffs' opposition to the motion to dismiss. (Doc. 22).

After a hearing on the motion and a review of the parties' submissions, the court finds

---

[1] References to "Doc. ___" are to the documents as numbered by the clerk of court in the court's record of the case.

[2] Janice Poole is the heir and successor-in-interest to Peggy L. Waldow.

that the defendant's motion to dismiss is due to be denied for the reasons set out herein.

## I.    BACKGROUND

This case involves a November 3, 1997 contract between the defendant, Greenetrack, Inc. ("Greenetrack"), and ATM Services International ("ATM Services") for the placement of an ATM machine on Greenetrack's property.  (Ex. 1).[3]  In the contract, ATM Services, is referred to as the "Placement Company" that is "securing [a] location for an assigned owner of an ATM machine that wishes to provide the Location and its patrons, guests, and customers an ATM Machine (hereinafter referred to as 'Equipment')."  (*Id*.).  At some point thereafter, McKinney and Peggy L. Waldow became assignees of the contract executed between Greenetrack and ATM Services.

As set out by the contract, Greenetrack was to provide an "appropriate, highly visible area of its premises" for the ATM machine and the plaintiffs were to be responsible for maintenance of the machine and keeping the machine in good working condition.  (Ex. 1).  Consumers using the machine were to be charged a $2.50 transaction fee.  As consideration for having the machine on its premises, Greenetrack received $.50 per transaction and McKinney and Waldow received the remaining $2.00.  (Complaint at ¶ 8; Ex. 1 at ¶ 8).[4]  The term of the initial contract expired on November 2, 2002, but the contract contained a provision that read as follows:

> The Agreement shall be automatically renewed for an additional five year term, unless Location [Greenetrack] gives 120 day [sic] written notice prior to the termination of the lease not to renew the Agreement.  Owner may terminate this Agreement at any time without penalty.

---

[3]The exhibit is attached to document 12 in the record.

[4]The complaint is located at document 1 in the record.

(Ex. 1 at ¶ 9).

At the end of the initial five year term, Greenetrack had not taken the requisite steps to cancel the contract so a second term began on November 3, 2002.  (Ex. 1 at ¶ 9).  At some date in 2004, however, Greenetrack removed the plaintiffs' ATM machine from its location and installed a machine owned by someone other than the plaintiffs in this case.  (Complaint at ¶ 10).

The plaintiffs then filed the present lawsuit.  The plaintiffs assert that this court has diversity jurisdiction over this breach of contract and conversion action under Title 28, United States Code, Section 1332.  Specifically, the plaintiffs contend that the parties in this suit are diverse and that the amount in controversy exceeds the $75,000.00 jurisdictional minimum.

## II.    MOTION TO DISMISS/SUMMARY JUDGMENT

### A.    Standard

Because briefs and affidavits have been presented in support of and in opposition to the defendant's motion to dismiss, the court will treat the motion as a motion for summary judgment pursuant to FED. R. CIV. P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided for in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

Summary judgment is to be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct.

3

2548, 91 L. Ed. 2d 265 (1986).  The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).

The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of her case on which she bears the ultimate burden of proof.  *Celotex,* 477 U.S. at 322-23; *see* FED. R. CIV. P. 56(a) and (b).  Once the moving party has met her burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324.  The nonmoving party need not present evidence in a form necessary for admission at trial; however, the movant may not merely rest on the pleadings.  (*Id*.).

After a motion has been responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The substantive law will identify which facts are material and which are irrelevant.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

4

### B.    DISCUSSION

In its motion to dismiss, the defendant asserts that the plaintiffs' claims are due to be

dismissed because the court lacks subject matter jurisdiction and because the plaintiffs'

complaint fails to state a claim for which relief can be granted.  (Doc. 5).  Specifically, the

defendant argues that the contract was void because it contained an automatic renewal clause that

is unconscionable and that the plaintiff's claims fail to meet the jurisdictional minimum required

to maintain a diversity action.  (Doc. 6 at pp. 2-3).

### 1.    Unconscionablilty

The defendant argues that "Alabama courts have found some automatic renewal

provisions to be unconstitutional."  (Doc. 6 at p. 3).  In the first case cited by the defendant in

support of its argument, the contract in question provided that the lease "may" be renewed with

"mutual consent" of the parties.  The court found that the contract was not automatically

renewable because of the use of the words "may" and "mutual consent."  *Mobile Eye Center,*

*P.C. v. Van Buren Partnership*, 826 So. 2d 135 (Ala. 2002).  Specifically, the court stated:

> We hold that the renewal provision here did not operate to automatically renew
> the lease.  That provision clearly states that the lease "may" be renewed "[w]ith
> the mutual consent of the parties."  Although it does state that the lessee shall give
> written notice if it does not intend to renew the lease, it does not say that if no
> such notice is given the renewal is automatic.  Therefore, the renewal provision
> was merely an agreement to agree to a renewal of the lease, which is not enforced
> in Alabama.  *Muscle Shoals Aviation, Inc. v. Muscle Shoals Airport Auth.*, 508 So.
> 2d 225, 227 (Ala. 1987); *Dixieland Food Stores, Inc. v. Geddert*, 505 So. 2d 371,
> 373 (Ala. 1987).

*Mobile Eye Center*, 826 So. 2d at 138.  In another Alabama case cited by the defendant, the

Alabama Supreme Court found the language "[s]aid (five year) option automatically arise[s]

upon the expiration of the initial term" to be ambiguous and held that it did not create an

automatic renewal clause in the contract.  (Doc. 6 at p. 4 (quoting *Morrow v. Wood*, 411 So. 2d

120 (Ala. 1982)).  In pertinent part, the *Morrow* court adopted the findings of the trial court and

stated as follows:

> "The Court further finds that the above-quoted language in the lease is
> ambiguous, since the term 'option' means 'privilege' in its normal and legal sense
> and is not synonymous with 'automatic renewal' as claimed by the plaintiff.  The
> Court finds, therefore, that by the language of the lease agreement, there is no
> automatic renewal of the lease, but the lease merely provides that an option or
> privilege would arise.  Since the document was prepared by the plaintiff and was
> for the benefit of the plaintiff, the Court finds that the said phrase should be
> construed against the plaintiff."

*Morrow*, 411 So. 2d at 121.

The defendant further argues that the lack of notice that the present contract was

renewable could be construed to be unconscionable.  The court finds that the language in the

present contract fails to support a conclusion that the contract is unconscionable.  The language is

not ambiguous.  It specifically states that

> [t]he Agreement **shall be automatically renewed** for an additional five year term,
> unless Location [Greenetrack] gives 120 day [sic] written notice prior to the
> termination of the lease not to renew the Agreement.  Owner may terminate this
> Agreement at any time without penalty.

(Ex. 1 at ¶ 9 (emphasis added)).  The court finds that the use of the word "shall" eliminates any

ambiguity that might arise with the use of permissive words such as "may."  This case is

distinguishable from those cited by the defendant.  Because the language unambiguously states

that the agreement shall automatically renew unless prior written notice is provided, the court

finds the defendant's argument to be without merit.  The motion is due to be denied on this basis.

### 2.      Amount in Controversy

The defendant next argues that the plaintiffs have not demonstrated that their loss would

exceed $75,000.00, and therefore, the complaint is due to be dismissed.  (Doc. 6 at p. 5).  The plaintiffs respond that the Eleventh Circuit has held that diversity cases "will not be dismissed unless it appears to a 'legal certainty' that plaintiff's claim is actually for less than the jurisdictional amount."  *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1314 (11th Cir. 2002).  The plaintiffs further assert that they have made claims for damages for breach of contract and conversion and may be entitled to punitive damages as well as damages for emotional distress in addition to their actual damages.  (Doc. 11 at pp. 2-3).  The plaintiffs claim forty-five months of lost profits amounting to around $32,000.00.  They further contend that shortly after their machine was removed, the defendant introduced video bingo at their facility which drastically increased the use of the ATM machine, thereby increasing the value of their lost profits.  (*Id.*).  Additionally, shortly before the hearing, they received discovery information demonstrating that from about December 2003 until July 2005, the replacement ATMs at Greenetrack were involved in approximately 152,977 transactions.  (Doc. 17, Attachment, Ex. A).

        In view of the evidence at this juncture, the court finds that it would be premature to find that the plaintiffs will not be able to establish a claim for the jurisdictional amount.

### 3.        Alabama's Door-Closing Statute

        In its reply to the plaintiff's response to its motion to dismiss, the defendant asserts the new argument that the contract is void and unenforceable because ATM Services International was not qualified to do business in the state of Alabama when it entered into the contract with Greenetrack.  (Doc. 12 at pp. 1-2).  In support of this argument, the defendant cites ALABAMA CODE § 10-2B-15.02 which is entitled "Consequences of transacting business without authority,"

and states in pertinent part:

> A foreign corporation transacting business in this state without a certificate of authority . . . may not maintain a proceeding in this state without a certificate of authority.  All contracts or agreements made or entered into in this state by foreign corporations prior to obtaining a certificate of authority to transact business in this state shall be held void at the action of the foreign corporation or any person claiming through or under the foreign corporation by virtue of the contract or agreement; but nothing in this section shall abrogate the equitable rule that he who seeks equity must do equity.

ALA. CODE § 10-2B-15.02(a).

The plaintiffs respond that the contract is not void for a number of reasons.  Specifically, they assert that (1) the contract falls under the interstate commerce exception to the Alabama door-closing statute; (2) the door-closing statute only makes the contract unenforceable by a foreign corporation and does not prevent the individual plaintiffs from enforcing the contract in this case; and (3) it would contravene the purposes of the statute to not allow the plaintiffs to receive the benefit of the bargain of the contract after performing under the contract with the defendant for six years.  (Doc. 17 at p. 5).

### a.    Interstate Commerce Exception

The defendant argues that the interstate commerce exception to enforcement of the door-closing statute does not apply because the contract at issue is not for the performance of any interstate transaction.  (Doc. 22 at p. 3).  In support of this contention, they referenced numerous cases at the hearing, including *Brown v. Pool Depot*, 853 So. 2d 181 (Ala. 2002), S&H *Contractors, Inc. v. A.J. Taft Coal Company, Inc.*, 906 F.2d 1507 (11th Cir. 1990), *Green Tree Acceptance, Inc. v. Blalock*, 525 So. 2d 1366 (Ala. 1988), *Calvert Iron Works, Inc. v. Algernon Blair, Inc.*, 227 So. 2d (Ala. 1969), and *Cadden-Allen v. Trans-Lux News Sign Corp.*, 48 So. 2d

428 (Ala. 1950).  The cases, however, are distinguishable.

*Brown* involved the purchase and installation of a pool by an unqualified out-of-state plaintiff company.  When the defendant defaulted on the contract, the plaintiff sought enforcement of an arbitration provision.  The court held that because the plaintiff was engaged in intrastate activity, the contract and its arbitration provision were void.  The decision was premised on the fact that the transaction involved "more than the mere solicitation of business here and more than the mere delivery of items sold."  *Id*. at 186-87.  Because it involved providing the labor for assembly and installation of the pool in Alabama, it was intrastate in nature.  *Id*. at 187.

*S&H Contractors* involved an agreement to assemble a "walking dragline" in Alabama by an unqualified out-of-state plaintiff company.  The Alabama defendant moved to dismiss the action and the plaintiff later moved to compel arbitration.  In addressing the door-closing statute, the court stated:

> In diversity cases, we apply a two-step analysis to determine whether Alabama's forum-closing statute bars a foreign corporation's contract claim. First, we determine whether Alabama courts, applying the statute, would refuse the foreign corporation's request to enforce the contract.  *See Aim Leasing Corp. v. Helicopter Medical Evacuation, Inc*., 687 F.2d 354, 357 (11th Cir. 1982).  If we conclude that Alabama courts would close their doors to the foreign corporation, then we must examine the burden such a closing would place on interstate commerce: we will not enforce the forum-closing statute if its enforcement in a particular case would unduly burden interstate commerce in violation of the federal commerce clause. . . .

*S&H Contractors*, 906 F.2d at 1509-10.  The court concluded that the assembly of machinery in Alabama was an intrastate transaction and the Alabama courts would refuse to enforce the contract.  *Id*. at 1510-11.  It further stated that in addressing the second question, the burden on

interstate commerce, the following factors should be examined:

> First, the courts often focus on the permanence and scope of relationships between the foreign corporation and the forum state. *See, e.g., Eli Lilly & Co. v. Sav-on-Drugs, Inc.*, 366 U.S. 276, 280-82, 81 S. Ct. 1316, 1319-20, 6 L. Ed. 2d 288 (1961); *Union Brokerage*, 322 U.S. at 210, 64 S. Ct. at 972; *SAR Mfg. Co. v. Dumas Bros. Mfg. Co.*, 526 F.2d 1283, 1284-86 (5th Cir. 1976).[5]  Second, the courts frequently ask whether the intrastate transaction is an essential element of an interstate transaction. *See, e.g., Allenberg Cotton Co. v. Pittman*, 419 U.S. 20, 30, 95 S. Ct. 260, 266, 42 L. Ed. 2d 195 (1974); *York Mfg. Co. v. Colley*, 247 U.S. 21, 24-26, 38 S. Ct. 430, 431-32, 62 L. Ed. 963 (1918); *Diversacon Indus., Inc. v. National Bank of Commerce*, 629 F.2d 1030, 1033 (5th Cir. 1980).

*S&H Contractors*, 906 F.2d at 1511.  The court went on to conclude that the transaction in that case was "sufficiently localized to permit enforcement of Alabama's forum-closing statute without violating the federal commerce clause." *Id*.  In so finding, the court concluded, "We would be ignoring reality if we concluded on these facts that the erection contract constituted a 'necessary,' 'essential,' or 'integral' part of the interstate sale of the dragline." *Id*. at 1513.

*Green Tree Acceptance* was an action by the plaintiff financing company to recovery under an installment sales contract involving a mobile home that was entered into between an unqualified corporate seller and the defendant.[6]  The action was precipitated by the defendants' failure to make their monthly payments after the seller of the home did not make the agreed repairs as promised at the time of the sale.  The trial court granted the defendants' motion for summary judgment, "presumably because [the selling party] was a foreign corporation that had not qualified to do business in Alabama." *Green Tree Acceptance*, 525 So. 2d at 1368.  Green Tree's motion to reconsider, for rehearing, and for modification, which asserted for the first time

---

[5]The court noted that "[i]n *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981."

[6]The plaintiff was qualified to do business in Alabama. *Green Tree*, 525 So. 2d at 1368.

that the seller was engaged in interstate commerce and not subject to the qualification statute, was denied.  The Alabama Supreme Court affirmed the decision of the trial court stating that the trial court had the discretion not to consider the plaintiff's new legal argument in a post-judgment motion and, therefore, correctly refused to alter, amend, or vacate its order granting a summary judgment in favor of the defendants.  The court did go on to address the merits of the plaintiff's claim.  After discussing the effect of the inclusion of labor and construction provisions in a sales contract, the court concluded that the labor and construction provisions in the contract at issue "were neither necessary nor incidental to the interstate sale of the mobile home" and therefore the contract was "within the purview of intrastate commerce" and the qualification provisions.  *Id*. at 1372.

*Calvert Iron Works, Inc*. involved a contract wherein Calvert, an unqualified corporation, agreed to provide and erect steel for a specified price in connection with additions to and alterations of Denny Stadium at the University of Alabama.  The contract included an agreement by Calvert to furnish and erect the steel.  After the contract was completed, the defendant withheld the final payment due under the contract.  The defendant raised the qualification statute as a defense.  The Supreme Court affirmed the trial court's dismissal of the action, holding that the qualification statute precluded the plaintiff's recovery even though the action involved an executed contract.

*Cadden-Allen* involved an action by an unqualified plaintiff seeking to recover under a written contract for the lease of a sign for a term of three years.  The evidence showed that the sign consisted of a number of sections which included sockets and bulbs, which were operated by an electrical machine.  The sign was installed on the face of a building by securing it to brackets

11

on the wall.  The plaintiff also hired local electricians to inspect and maintain the sign.  It was

removable and title to the sign remained in the plaintiff.  Rent was payable monthly.  The

defendant failed to pay as required and further failed to give notice of cancellation.  It was

removed from the building by the plaintiff when the defendant defaulted.  The defendant

contended that by installing and maintaining the sign while it was on site consisted of doing

business in Alabama thus requiring the plaintiff to qualify to do business in Alabama.  The

plaintiff disagreed, arguing that its "acts of ownership, leasing, reservations of rents, inspection

and right of removal were mere incidents of interstate commerce, and therefore, it was not

engaged in doing business in Alabama." *Cadden-Allen*, 48 So. 2d at 429.  The court held that

"the act of installing, maintaining, and keeping the sign in repair and the removal thereof was the

transaction of local business, in violation of the [State qualification provisions]." *Id*. at 430.

The plaintiffs cite *Carbon Processing Company v. Lapeyrouse Grain Corp*., 779 F.2d

1541 (11th Cir. 1986) and *Foxco Industries Ltd. v. Fabric World, Inc*., 595 F.2d 976 (5th Cir.

1979), in support of their argument that the conduct in this case is sufficient to invoke the

interstate commerce exception.  These cases are similarly distinguishable.

*Carbon Processing* involved an out-of-state broker who contracted with the defendant for

the sale of plant equipment located in Alabama.  The contract was entered into in Birmingham

and the broker brought potential buyers to view the equipment at the Alabama plant.  The

Eleventh Circuit held that the broker's contacts were insufficient to establish an intrastate aspect

to permit application of the qualification statute.  To the contrary, the court, in reversing the trial

court's granting of summary judgment, stated that "[a]pplying the qualification statute to [the

plaintiff] impeded interstate commerce in contravention of the Commerce Clause of the

Constitution."[7]  *Carbon Processing*, 779 F.2d at 1543.

*Foxco Industries* involved a dispute between an out-of-state fabric manufacturer and a retailer.  One of the issues was whether the plaintiff manufacturer's claims were barred due to its failure to qualify to do business in Alabama.  The Fifth Circuit held that Alabama's qualification provisions did not preclude the plaintiff's claims.  Specifically, the court stated:

> . . . .  Foxco has neither salaried employees nor offices in Alabama.  Most of its Alabama sales are solicited by a commissioned sales representative who represents many manufacturers.  On occasion Foxco's sales manager, a salaried employee, travels to Alabama from New York to meet with the sales representative and to solicit orders from a few large customers.  Of Foxco's $14,000,000 nationwide sales in 1974 a little over $100,000 came from Alabama.  Under current Alabama law these basic facts do not establish the elements necessary to bar Foxco from district court in this case.

*Foxco Industries*, 595 F.2d at 980.

Deriving instruction from the foregoing, the court finds that there is sufficient evidence before it to overcome the defendant's motion premised on the fact that the lease transaction and the concomitant circumstances warrant a finding that the conduct sufficiently involves interstate commerce to preclude application of the door-closing provisions.  First, ATM Services sold ATM locations on a nationwide basis.  (McKinney Aff. at ¶ 3).[8]  As best the undersigned can tell,

---

[7]The court also stated:

> This is not a case like *Allenberg Cotton Company, Inc. v. Pittman*, 419 U.S. 20, 95 S. Ct. 260, 42 L. Ed. 2d 195 (1974), where intricate interstate marketing aspects of the cotton exchange business carried on by a corporation predominated over local contracts made in Mississippi.  The Supreme Court held that the Mississippi qualifications statute impeded the nation-wide marketing system of cotton.  Carbon Processing is nothing more or less than a broker, operating out of its offices in Ohio, which attempted to find a purchaser for equipment located in Alabama and thereby to earn a finder's fee.  It has no facilities in Alabama and no personnel or equipment based in Alabama.  It did nothing in Alabama except enter into a brokerage contract and, on transitory visits to Alabama, bring potential purchasers to look at the equipment.

*Carbon Processing*, 779 F.2d at 1544.

[8]Donna McKinney's affidavit is located at document 21, exhibit A.

it had no offices, warehouses, or employees in Alabama.  The contract at issue in this action was

entered into with the intent that the contract be assigned to the owner of the ATM machine.

Second, the compensation for the location and services was to be paid on a per transaction basis.

The monitoring and processing services, including compensation for the lease, related to the

ATM machine at Greenetrack were handled by Automated Systems America, Inc.

("Automated"), a California corporation.  (Vafaie Aff. at ¶ 3).[9]  Automated provides such

services to ATM machine owners across the country.  Third, the ATM machine was connected to

bank networks across the country.  (*Id*. at ¶ 4).

The defendant's argument that the "contract in question is for the exclusive use of

specific real property in Alabama namely, Greenetrack," insufficiently limits the court's

consideration of the present issue.  Accordingly, it is rejected.  The lease is an essential part of

the operation of the ATM at Greenetrack and the transactions at that location, which are

processed interstate, are integral to the operation and the defendant's compensation.  *See S&H*,

906 F.2d at 1511.  The motion is therefore due to be denied.

### b.        Individual Plaintiffs and Equity Exceptions

In view of the court's ruling above, the court pretermits further discussion of the

plaintiffs' arguments that the motion is due to be denied because they are individual plaintiffs

and not a corporation and because of equitable considerations.[10]

### 4.        Lack of Mutuality

Lastly, the defendant argues that the contract is unenforceable because it lacks mutuality.

---

[9]Marion Vafaie's affidavit is located at document 21, exhibit B.

[10]The court further declines to address the plaintiffs' third-party beneficiary claims.  (See Doc. 20 at p. 13).

(Doc. 12 at p. 2).  Specifically, the defendant asserts that mutuality is absent from the contract because the contract provides that the owners of the ATM "may terminate [the] agreement at any time without penalty."  (See Ex. 1).  In support of its contention, the defendant cites *Marcrum v. Embry*, 282 So. 2d 49 (Ala. 1973), for the proposition that "[i]t is quite true that where one party reserves an absolute right to cancel or terminate a contract at any time, mutuality is absent."

When the previous sentence is placed in context, the defendant's contention is without merit.  In *Marcrum*, the issue was "whether a lease, which gives one of the parties thereto the option to cancel or terminate it on a specified notice, is so lacking in mutuality as to be unenforceable."  *Id.*, 282 So. 2d at 51.  Citing the foregoing proposition of law, the court stated in full as follows:

> It is quite true that where one party reserves an absolute right to cancel or terminate a contract at any time, mutuality is absent. 17 C.J.S. Contracts s 100(6), p. 807.  But a lease for a definite term is not converted into a tenancy at will by the fact that an option to surrender it before the expiration of the term is conferred upon the lessee, particularly so where the option rests upon a valuable consideration.  51C C.J.S. Landlord & Tenants s 157, p. 464.

*Id.*, 282 So. 2d at 52.  The *Marcrum* court went on to say, "'The fact that plaintiff reserved the right to cancel the lease upon giving thirty days' notice, while a like right is not given to the defendant, does not deprive it of its bilateral character.  It is not necessary for mutuality that every covenant be mutual. . . . '"[11]  *Id.* (citing *National Refining Co. v. Cox*, 57 S.W.2d 778, 781 (K.C. Mo. App. 1933)).  Ultimately, the court held that the unilateral termination notice

---

[11]The court reasoned further that

the requirement of mutuality does not mean that the promisor's obligation must be exactly coextensive with that of the promisee.  It is enough that the duty unconditionally undertaken by each party be regarded by the law as a sufficient consideration for the other's promises.

*Marcrum*, 282 So. 2d at 53.

provision did not render the lease void for lack of mutuality.  *Marcrum*, 282 So. 2d at 54.

Under the present circumstances, the court cannot find that the contract in this case lacked mutuality.  The parties entered into the contract through bargained-for consideration.  The law does not require that the consideration be equal.  This court, like the *Marcrum* court, finds it "difficult . . . to understand why and how the [defendant] continued to comply with the agreement at all times from [May 1997 to 2003], but now finds it so faulty as to be unenforceable against [it]."  *Id*. at 53.

III.    **CONCLUSION**

For the reasons set out herein, the court finds that the defendant's motion to dismiss, which the court has converted to a motion for summary judgment, is due to be denied.  An appropriate order will be entered.[12]

**DONE**, this the 4th day of November, 2005.

*John E. Ott*

**JOHN E. OTT**
United States Magistrate Judge

---

[12]To the extent that the defendant challenges the plaintiffs' calculation of damages, the court finds the same to be otherwise premature at this juncture.  To the extent that the plaintiffs' argue that discovery is necessary prior to a determination of the motion because the issue of interstate commerce is a "mixed question of fact and law," the court finds that argument moot premised on the submissions of the parties and the court's holding herein.

16